CLOSED

# U.S. District Court
## Eastern District of New York (Brooklyn)
## CRIMINAL DOCKET FOR CASE #: <u>1:23−mj−00393−PK</u> All Defendants

Case title: USA v. SUN

Date Filed: 04/25/2023

Date Terminated: 04/25/2023

Assigned to: Magistrate Judge Peggy Kuo

**Defendant (1)**

**QING HUA SUN**
*TERMINATED: 04/25/2023*

represented by **Michelle A. Gelernt**
Federal Defenders of New York
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
718−330−1204
Fax: 718−855−0760
Email: michelle_gelernt@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or*
*Community Defender Appointment*

**Pending Counts**

None

**Disposition**

**Highest Offense Level (Opening)**

None

**Terminated Counts**

None

**Disposition**

**Highest Offense Level (Terminated)**

None

**Complaints**

None

**Disposition**

**Plaintiff**

**USA**

represented by **Rebecca M. Schuman**
DOJ−USAO

271−A Cadman Plaza East
Brooklyn, NY 11201
718−254−7202
Email: rebecca.schuman@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Government Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/25/2023 | 1 | RULE 40 AFFIDAVIT / removal complaint to the District of Massachusetts by USA as to QING HUA SUN. Signed by Judge Peggy Kuo dtd 4/25/2023. (SY) (Entered: 04/25/2023) |
| 04/25/2023 |  | Minute Entry for proceedings held before Magistrate Judge Peggy Kuo : Initial Appearance in Rule 5(c)(3) Proceedings as to QING HUA SUN held on 4/25/2023, Attorney Appointment of federal defender Michelle Gelernt for the defendant present. AUSA Rebecca Schuman present. Mandarin int − Nancy Wu.(FTR Log #3;05−3;40.) Defendant arraigned on a removal complaint to the District of Massachusetts. Detention hearing held. Gov't opposed bail. Defense counsel presented a bail package. Court set bond in the amount of $70,000 with conditions. Defendant and 2 suretors advised of bond obligations and signed bond. Defendant released. Defendant to report to Court in Mass on 5/30/2023. Defendant waived identity hearing. (SY) (Entered: 04/25/2023) |
| 04/25/2023 | 2 | ORDER Setting Conditions of Release as to QING HUA SUN (1) $70,000 bond. Ordered by Magistrate Judge Peggy Kuo on 4/25/2023. (SY) (Entered: 04/25/2023) |
| 04/25/2023 | 3 | REDACTED $70,000 bond as to QING HUA SUN to 2 Order Setting Conditions of Release. Signed by Judge Peggy Kuo dtd 4/25/2023. (SY) (Entered: 04/25/2023) |
| 04/25/2023 | 4 | WAIVER of Rule 5(c)(3) Hearing by QING HUA SUN (SY) (Entered: 04/25/2023) |
| 04/25/2023 | 5 | CJA 23 Financial Affidavit by QING HUA SUN (SY) (Entered: 04/25/2023) |

AB:RMS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,

            - against -

QING HUA SUN,

                 Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

**A F F I D A V I T   I N   S U P P O R T   O F   R E M O V A L   T O   T H E   D I S T R I C T   O F   M A S S A C H U S E T T S**
(Fed. R. Crim. P. 5)

Case No. 23-MJ-393

EASTERN DISTRICT OF NEW YORK, SS:

        CHARLES LEE, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

        On or about April 14, 2023, the United States District Court for the District of Massachusetts issued an arrest warrant for the arrest of QING HUA SUN for a violation of Title 18, United States Code, Section 1956(h) (conspiracy to commit money laundering).

        The source of your deponent's information and the grounds for his belief are as follows:[1]

        1.      On or about April 14, 2023, the United States District Court for the District of Massachusetts issued a warrant for the arrest of the defendant QING HUA SUN for violating Title 18, United States Code, Section 1956(h) (conspiracy to commit money laundering).  A true and correct copy of the warrant (the "Arrest Warrant") is attached as Exhibit

---

[1]      Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

A, and a true and correct copy of the now unsealed Complaint charging SUN with a violation of Title 18, United States Code, Section 1956(h) is attached as Exhibit B.

2.      On or about April 25, 2023, law enforcement officers apprehended SUN at 220 Bay 13th Street in Brooklyn, New York (the "Brooklyn address") pursuant to the Arrest Warrant.  The Brooklyn address is listed on SUN's New York State Department of Motor Vehicles Driver's License.

3.      I have reviewed the Arrest Warrant and photographs of SUN obtained during the underlying investigation.  I observed that SUN's appearance is consistent with a photograph of the QING HUA SUN wanted in the District of Massachusetts.  Upon his arrest, SUN identified himself as QING HUA SUN.

4.      Following SUN's arrest, a female occupant of the Brooklyn address provided law enforcement officers with SUN's New York State Department of Motor Vehicles Driver's License and U.S. passport.

WHEREFORE, your deponent respectfully requests that the defendant QING HUA SUN, be removed to the District of Massachusetts so that he may be dealt with according to law.

S/ Charles Lee

_____

CHARLES LEE
Special Agent
Federal Bureau of Investigation

Sworn to before me this
25
_____ day of April, 2023

S/ Peggy Kuo

_____

HONORABLE PEGGY KUO
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

2

# EXHIBIT A

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
### for the
District of Massachusetts

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 23-4299-DHH |
| QING HUA SUN | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant* | | |

## ARREST WARRANT

To:    Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*   QING HUA SUN                                                                                    ,
who is accused of an offense or violation based on the following document filed with the court:

❑ Indictment    ❑ Superseding Indictment    ❑ Information    ❑ Superseding Information    ☑ Complaint
❑ Probation Violation Petition    ❑ Supervised Release Violation Petition    ❑Violation Notice    ❑ Order of the Court

This offense is briefly described as follows:

   18 U.S.C. § 1956(h) - Conspiracy to commit money laundering

Date:      04/14/2023

City and state:    Boston, Massachusetts

*Issuing officer's signature*

Hon. David H. Hennessy, U.S. Magistrate Judge
-
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |

Date: _____

*Arresting officer's signature*

*Printed name and title*

**This second page contains personal identifiers provided for law-enforcement use only
and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender:  Qing Hua Sun

Known aliases:

Last known residence:  Brooklyn, NY

Prior addresses to which defendant/offender may still have ties:

Last known employment:

Last known telephone numbers:

Place of birth:

Date of birth:  12/25/1975

Social Security number:  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

Height:                                              Weight:

Sex:  Male                                        Race:  A

Hair:                                                 Eyes:

Scars, tattoos, other distinguishing marks:

History of violence, weapons, drug use:

Known family, friends, and other associates *(name, relation, address, phone number)*:

FBI number:  266310HC4

Complete description of auto:

Investigative agency and address:

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*:

Date of last contact with pretrial services or probation officer *(if applicable)*:

# EXHIBIT B

AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
District of Massachusetts

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| QING HUA SUN | ) | Case No.   23-4299-DHH |
| | ) | |
| | ) | |
| _Defendant(s)_ | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___January 2022 to October 2022___ in the county of ___Suffolk and elsewhere___ in the

___ District of ___Massachusetts___ , the defendant(s) violated:

| _Code Section_ | _Offense Description_ |
|---|---|
| 18 U.S.C. § 1956(h) | Conspiracy to commit money laundering |

This criminal complaint is based on these facts:

See attached affidavit of FBI Special Agent Benjamin Wallace

☑ Continued on the attached sheet.

_Benjamin Wallace/_
_____
_Complainant's signature_

Benjamin Wallace, FBI Special Agent
_____
_Printed name and title_

~~Subscribed and~~ sworn to via telephone in accordance
with Federal Rule of Criminal Procedure 4.1.

Date:   ___04/14/2023___

_____
_Judge's signature_

City and state:        ___Boston, Massachusetts___

Hon. David H. Hennessy, U.S. Magistrate Judge
_____
_Printed name and title_

## AFFIDAVIT

I, Benjamin Wallace, Special Agent, Federal Bureau of Investigation ("FBI"), being sworn, state as follows:

1.     I have been employed as a Special Agent with the FBI since 2009. I am currently assigned to the FBI's Boston Field Office's Organized Crime Task Force (the "FBI Task Force"). Before joining the FBI, I was a Special Agent with the United States Secret Service for approximately four years. Before that, I worked as a police officer with the City of Atlanta, Georgia Police Department for approximately five years.

2.     The mission of the FBI Task Force is to identify, investigate, disrupt and dismantle sophisticated criminal organizations operating in Massachusetts, with a particular focus on those groups connected to national or transnational criminal networks that pose the greatest threat to the national and economic security of the United States. The FBI Task Force uses a broad array of techniques to conduct these investigations, including utilizing information received from confidential human sources; examining and exploiting telephone, social media, and financial records; and embedding undercover agents in dangerous, difficult-to-penetrate groups.

3.     I submit this affidavit in support of an application for a criminal complaint charging that, from in or about January 2022 to at least October 2022, QING HUA SUN, a/k/a "Ben" (hereinafter, "SUN") conspired to commit money laundering, in violation of Title 18, United States Code, Section 1956(h).

4.     During this investigation, the FBI Task Force used cooperating witnesses ("CWs") and undercover agents ("UCs") to infiltrate a criminal organization led by JIN HUA ZHANG. This organization (hereinafter, the "ZHANG Organization") laundered large sums of money for

1

various criminal groups.[1]  Agents on the FBI Task Force first detected the network in greater Boston but also identified leaders and members of the group throughout the United States and overseas.  Over the past year, agents determined that the ZHANG Organization laundered at least $25 million worth of proceeds from the sale of controlled substances, fraud schemes, and profits from other illegal businesses.  To date, agents have traced funds from the ZHANG Organization to Hong Kong and elsewhere in China, India, Cambodia, and Brazil, among other locations.  The investigation also revealed that the ZHANG Organization distributed kilogram-sized quantities of cocaine, a Schedule II controlled substance, and MDMA, or ecstasy, a Schedule I controlled substance, to FBI CWs and UCs.

5.     This affidavit does not set forth all the facts developed during the course of this investigation.  Rather, it describes only those facts necessary to establish probable cause to believe that the SUN committed the violation set forth in the accompanying criminal complaint.

6.     The Money Laundering Conspiracy.  Agents first became aware of the ZHANG Organization in May 2021, when a Boston-area member of the ZHANG Organization, LICHENG HUANG,[2] began to have a series of discussions with a cooperating witness (CW-1).[3]  In these

---

[1] ZHANG has been charged with conspiracy to commit money laundering, in violation 18 U.S.C. § 1956(h), and conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846, in *United States v. Zhang, et al.*, Case No. 22-cr-10279-AK.

[2] HUANG has been charged with conspiracy to commit money laundering, in violation 18 U.S.C. § 1956(h), in *United States v. Zhang, et al.*, Case No. 22-cr-10279-AK.

[3] CW-1 began providing information to agents when it was unable to pay debts it incurred to an extortionate lender.  In exchange for information, agents paid CW-1, who used the funds to help resolve its debt.  Since then, CW-1 has been paid for its work in this and other investigations. CW-1 has been advised that agents will take steps to ensure CW-1's safety and the safety of CW-1's family.  CW-1's information has been corroborated by agents and by the investigation generally.  For that reason, I believe CW-1 is reliable.

USCA2 11

exchanges, which agents recorded or preserved, HUANG asked CW-1 on behalf of his "boss" (later identified as ZHANG) if CW-1 knew anyone who could launder the proceeds of drug sales by converting United States currency into Chinese renminbi (RMB) and then having those funds deposited in Chinese bank accounts.[4]

7.     Based on this information, the FBI Task Force designed an undercover operation to identify the network of money launderers working with HUANG's group (which ultimately led to ZHANG) and to identify the sources of the illicit funds that the group sought to launder.  Agents directed CW-1 to make HUANG a counterproposal: CW-1 would agree to introduce HUANG to other criminals (in reality, FBI undercover agents) who could help HUANG and his group convert drug funds into cryptocurrency.  Based on my training and experience, I know that cryptocurrency is a decentralized, peer-to peer, computer network-based medium of exchange that may be used as a substitute for government-issued currency.  Cryptocurrencies have legitimate uses but are also used for criminal purposes such as money laundering and are an often used means of payment for illegal goods and services.  Cryptocurrency is stored in a virtual account called a wallet.  Those who use cryptocurrency for illicit purposes often maintain multiple wallets in an effort to thwart law enforcement's ability to track purchases or transfers.  I also know that Tether (sometimes referred to as "USDT" or "U") is a cryptocurrency.

8.     Over a series of phone calls and meetings in June and July 2021, CW-1 introduced HUANG to two undercover agents, UC-1 and UC-2 (collectively, the "UCs").  UC-1 spoke Mandarin and posed as a West Coast-based criminal.  UC-2 posed as UC-1's partner and a money launderer based in Boston. UC-1 explained to HUANG that he used Boston-based UC-2 to launder

---

[4] CW-1 communicated with HUANG on a cellular telephone registered to him at his home address.  CW-1 also identified HUANG from a Registry of Motor Vehicles (RMV) photograph.

money, including drug proceeds, by converting the funds to cryptocurrency, which could then be transmitted to China or elsewhere without being detected by law enforcement. UC-1 and UC-2 explained to HUANG that UC-2 charged a fee for this service, and that the fee varied based on the level of danger involved (for instance, the fee charged for laundering funds derived from low-risk internet-based scams was smaller than the fee charged for funds derived from drug trafficking).

9.     On July 28, 2021, agents recorded a meeting between CW-1, the UCs, and HUANG in Newport, Rhode Island. During this meeting, HUANG explained to the UCs that his "boss" needed to launder large amounts of proceeds from marijuana trafficking. The UCs, in turn, explained to HUANG how the group's drug proceeds would be converted into cryptocurrency: once HUANG contacted CW-1 to report he would have cash to convert, CW-1 would direct HUANG to a meeting location (often a public area, like the parking lot of a bank or grocery store or coffee shop). CW-1 and HUANG would meet at the predetermined location. Once there, a courier would bring a bag containing a bulk cash delivery. CW-1 would confirm that the correct amount of money had been delivered. CW-1 would then contact UC-2 by phone. After UC-2 received confirmation that the funds to be laundered had arrived, UC-2 would send an equivalent amount of cryptocurrency, minus a service fee, to a digital wallet that a ZHANG Organization member would identify. The UCs explained that the person in control of the digital wallet (later identified as ZHANG) would be able to confirm that the transfer had occurred within seconds.

10.    During the meeting on July 28, 2021, UC-2 made a small cryptocurrency transfer to a digital wallet that HUANG identified as belonging to his "boss." When HUANG called his "boss," UC-1 observed that the contact name on HUANG's telephone was "Hua." Agents reviewed toll records from HUANG's phone and determined that during the meeting HUANG

4

called telephone number (917) 916-3567, which, according to a law enforcement database, was a
telephone number associated with ZHANG.

    11.    <u>ZHANG Identified Other Sources of Funds To Be Laundered</u>. On January 10,
2022, ZHANG arrived at the One Hotel in Brooklyn, New York with an associate, who agents
later identified as SUN.[5] In a lengthy video-recorded meeting involving UC-1, UC-2, CW-1, and
another UC in a minor supporting role, ZHANG and SUN discussed expanding their money
laundering business. During this meeting, UC-1 told ZHANG and SUN that his business is mostly
from Latin America, that he usually charged a 7 percent fee for "powder" (cocaine) money, that
this money would be laundered through enough layers that it would appear to be clean. As a result,
UC-1 told ZHANG and SUN, both UC-1 and his customers are protected. In response, ZHANG
explained that they had money from similar sources (drug money) but all those funds were in cash
and were either from "leaf" (marijuana) or "white" from Latin America (cocaine).

    12.    ZHANG then asked the UCs if they have dealt with what he called "T5" money.
In response, the UCs told ZHANG and SUN that the money they launder comes from many
different sources. ZHANG explained what he meant by "T5" money. According to ZHANG,
these funds come from victims of fraud schemes. These funds are transferred from business or
personal accounts when a victim is convinced under false pretenses to transfer money to a
fraudster's account. ZHANG provided the UCs with the following example of a T5 scheme: a
scammer uses social media, such as Instagram or Facebook, to lure a victim to "invest in"
cryptocurrency. The victim is led to believe that he or she is making money, so the victim invests

---

[5] New York-based agents on surveillance advised that they believed that the person
accompanying ZHANG was SUN. I obtained a driver's license photograph of SUN and showed
that image to CW-1, who identified SUN as ZHANG's associate. I also reviewed the video
recording, which is well over an hour, and identified SUN with ZHANG in the video recording.

USCA2 14

more. However, eventually, the scammer takes the victim's money. ZHANG indicated that if the loss amount is small, neither the police nor the bank would investigate. But if the loss is large enough, ZHANG said the FBI could get involved. Normally, by the time the victims realize that they are being scammed and report the fraud to the bank or police, the proceeds have been transferred out of the fraudster-controlled bank account that was receiving the victim's money. However, once the fraud is detected, the bank or law enforcement would know that the receiving account was involved with an online fraud. Therefore, the accounts are often closed. ZHANG's description of the fraud schemes highlighted a problem that ZHANG and his associates discussed regularly with the UCs and CWs during this investigation and worked to overcome, namely, finding ways to extract funds from the accounts to which fraud victims send money without leaving a trail of accounts that could be traced to the fraudsters who were responsible for tricking the victims into parting with their money.

13. SUN told the UCs that the volume of deposits into the receiving accounts was hard to control. SUN stated that his cousin told him that $10,000 or $20,000 would be wired to SUN's account per day. However, $180,000 was transferred one day in November and SUN lost it all (agents later learned that the loss was the result of the account being frozen). SUN also raised another concern, namely there were times when a victim's bank would call the victim to confirm a wire transfer, which could delay the release of funds and jeopardize the scheme. SUN told the UCs that he wanted to disclose to them all the risk ahead of time before they became more involved in the money laundering operation.

14. ZHANG's January 27, 2022, Pick Up of $190,000 At Frank Pepe's Pizza in New Haven, Connecticut. Beginning on January 25, 2022, ZHANG and UC-2 began to plan for a $200,000 money bulk cash pick up. At about 8:27 p.m., UC-2 sent ZHANG a message over

6

Telegram: "Cash pick up about noon?"  ZHANG responded, "Will know by 11 pm after my guy pick the find [sic] funds."

15.    On January 26, 2022, UC-2 texted ZHANG, "How's it looking bro?"  ZHANG responded, "Still Waiting for answers since morning."  At 2:22 p.m., ZHANG sent a message, "I thnk [sic] need to be rescheduled."  UC-2 replied, "OK, let m[e] know" and told him he was holding Tether for him.  At 8:29 p.m., ZHANG called UC-2 and they arranged to conduct a $190,000 bulk cash pick up the next day.  UC-2 sent ZHANG the address: "Frank Pepe Pizzeria Napoletana, 14 Wooster Street, New Haven, CT."  UC-2 told ZHANG that he and CW-2 would meet him there.  UC-2 told ZHANG, "I'll buy you lunch if you come" and ZHANG replied "hahaha thanks."

16.    On January 27, 2022, a surveillance team accompanied UC-2, CW-2, and another undercover agent in a limited role posing as an employee of UC-2, to Frank Pepe's restaurant.  At 12:48 p.m., UC-2 sent a message to ZHANG over Telegram: "We are here having lunch."[6] ZHANG responded, "Enjoy will be there 26 minutes."  At 1:13 p.m., ZHANG texted UC-2, "I'm here."  UC-2 replied, "You wanna come in or you want Linda to come out?"  ZHANG told UC-2, "Just send her out."  UC-2 responded, "OK she's coming."  Three minutes later, ZHANG texted UC-2, "190k only" and "Not 200k."  UC-2 responded, "Ok take fee of [sic] the top?"  ZHANG responded, "Yes you can."  UC-2 did the math, "Ok I will send 186200," then asked ZHANG "same wallet as before?"  ZHANG forwarded UC-2 the address for the digital wallet.

17.    Agents saw CW-2 and UC walk out of the restaurant and enter a white Toyota sedan.  Agents saw two men in the car.  CW-2 entered the Toyota alone.  ZHANG was in the front

---

[6] Telegram is cloud-based, encrypted messaging service.  During this investigation, ZHANG and UC-2 often used Telegram to communicate regarding the ZHANG Organization's money laundering operation.

7

passenger seat and an Asian male was in the driver's seat. ZHANG told CW-2 that it was risky to bring the money inside the pizzeria and that he felt more comfortable in the car. ZHANG told CW-2 that he needed UC-2 to launder larger amounts of money because the current volume was too small. ZHANG also asked CW-2 if CW-2 had heard about the fact that one of his money couriers had stolen $200,000 from him the previous week. ZHANG handed CW-2 a bag of money. CW-2 contacted UC-2, who wired Tether to ZHANG's digital wallet. Once UC-2 confirmed that the deal was done (he texted a screen shot of the Tether exchange to ZHANG over Telegram), CW-2 and the undercover agent walked back into the restaurant carrying the bag of cash and the Toyota drove away. The bag that ZHANG delivered contained $190,000 in cash.

18. On January 30, 2022, ZHANG and UC-2 used Telegram to communicate about a $25,000 wire transfer. ZHANG confirmed the account number with UC-2 and UC-2 asked whether the exchange would take place that day. ZHANG replied, "tomorrow." On January 31, 2022, at 11:36 a.m., ZHANG used Telegram to send UC-2 an image of a Bank of America receipt showing a $25,000 wire transfer to an FBI undercover account, along with the text, "T5." At 11:52 a.m., ZHANG texted UC-2, "please check." At 1:35 p.m., UC-2 responded "OK," "It's processing, should clear in an hour and I will send 24250," and "Same wallet?" ZHANG responded, "yes."

19. After the foregoing exchange, ZHANG sent UC-2 a fifteen second audio message about a deal in a few days (after the Chinese New Year). ZHANG explained the source of these funds: "it's like gambling money . . . its's not, umm, it's not, umm, scam money . . . it's gambling money, right now I'm testing, they are sending the money to my account first, if it's ok, I'm thinking of sending some of the money to your account. Is that ok?"

8

20.     ZHANG and SUN's Meeting With Undercover Agents Regarding Laundering Funds Derived from a Cambodia-Based Fraud Scheme.  On April 4, 2022, ZHANG and SUN met with UC-1 and UC-2 at the One Hotel in Brooklyn and then later at a restaurant in Queens.  During this meeting, the group discussed ZHANG and SUN's continued efforts to obtain cryptocurrency from the Boston-based UC-2 in exchanged for illicit funds.  At the meeting, ZHANG told the UCs that he was "in it with them for the long haul."  In addition, ZHANG indicated that he had new clients based in Cambodia who were the source of to-be-laundered funds and that SUN was the person who established the connection with the Cambodian clients.

21.     U.S. Customs and Border Protection ("CBP") records confirm that SUN and ZHANG traveled to Cambodia approximately one month before the April 4, 2022 meeting.  On or about March 4, 2022, ZHANG arrived at John F. Kennedy International Airport on an in-bound flight from Seoul, South Korea.  ZHANG's flight had originated in Phnom Penh, Cambodia.  Upon his arrival, ZHANG told a CBP official that he was returning from a thirteen-day trip to Cambodia and indicated that he had been traveling with SUN.  ZHANG told the CBP official that SUN would be returning to the United States on March 6, 2022 (records later confirmed that SUN returned to New York on March 7, 2022).

22.     Based on my training and experience in this investigation, I know that certain international fraud operations are based in Cambodia.  I know from my training and experience, as well as open-source media reports, that some Cambodia-based fraudsters operate from compounds where they direct, and in some cases compel, individuals to use the internet and social media to contact and subsequently defraud victims by offering fictitious investment opportunities. Based on my training and experience, ZHANG's previous description of his organization's money laundering operation (including his description of the origin of T5 money), and the April 4, 2022

9

USCA2 18

discussion involving ZHANG and SUN's activities, all establish that ZHANG and SUN agreed and intended to exchange proceeds derived from a Cambodia-based fraud operation for cryptocurrency that the Boston-based UC-2 would provide. Based on my training and experience, this would enable the principals of the Cambodia-based fraud operation to obtain the fraud victims' money while avoiding detection by law enforcement.

23.    On June 4, 2022, ZHANG and SUN traveled to the Seaport District in Boston to meet with UC-2. During that meeting, ZHANG, SUN, and UC-2 continued to discuss their money laundering operation. During their conversation, they discussed concerns about bank accounts that ZHANG and the UCs had used to receive wire transfers that had been audited or reviewed by bank fraud examiners. ZHANG, SUN, and UC-2 also placed a call to UC-1. During that recorded call, ZHANG and SUN discussed the need to hire someone to collect an overdue debt from an associate in California. ZHANG also asked if UC-2 could identity additional fraud victims for the ZHANG Organization to target.

24.    In summary, over the course of several lengthy meetings, ZHANG, SUN, UC-1, UC-2, and CW-1 discussed how the UCs would aid the ZHANG organization's efforts to launder funds from drug trafficking and other frauds by converting the funds to cryptocurrency for a fee. ZHANG and SUN's laundering operation included funds derived from fraud operations based in Cambodia, which SUN was responsible for cultivating. Accordingly, the ZHANG Organization's cash deliveries, wire transfers, and check deposits were proceeds derived in violation of 21 U.S.C. § 846, and 18 U.S.C. §§ 1343 (wire fraud) and 1349 (wire fraud conspiracy). And SUN, ZHANG, and others' agreement to convert these funds to cryptocurrency constitutes a violation of 18 U.S.C. §§ 1956(h) (money laundering conspiracy).

25. <u>Conclusion</u>. Based on the information set forth above, I submit that there is probable cause to believe that QING HUA SUN conspired with JIN HUA ZHANG and others to commit money laundering, in violation of Title 18, United States Code, Section 1956(h).

I, Benjamin Wallace, having signed this Affidavit under oath as to all assertions and allegations contained herein, state that its contents are true and correct to the best of my knowledge, information, and belief.

Benjamin Wallace
Special Agent
Federal Bureau of Investigation

~~Signed electronically~~ and sworn to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 on this 14th day of April 2023.                4:42 p.m.

The Honorable David H. Hennessy
United States Magistrate Judge

-

11

**UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF NEW YORK**

**United States of America**

Case No. 23-~~CR~~ MJ - 393

v. Qing Hua Sun , *Defendant*

### ORDER SETTING CONDITIONS OF RELEASE AND APPEARANCE BOND

#### RELEASE ORDER

It is hereby ORDERED that the above-named defendant be released subject to the Conditions of Release below and:

( ☐ ) On **Personal Recognizance** on the defendant's promise to appear at all scheduled proceedings as required, or

( ☑ ) Upon **Bond** executed by the defendant in the amount of $ 70,000 , which shall be

    ☐ unsecured; ☑ cosigned by the financially responsible sureties identified on this bond;

    ☐ secured by Collateral set forth on the Appearance Bond Supplement.

#### CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to the following conditions, which the Court finds are the least restrictive conditions necessary to reasonably assure the appearance of the defendant as required and the safety of any other person and the community:

(1) The defendant must appear in court as required and surrender as directed for service of any sentence imposed.

(2) The defendant must not commit a federal, state or local crime while on release.

(3) The defendant must cooperate in the collection of DNA sample if it is authorized by 34 U.S.C. § 40702.

(4) The defendant must advise the Court in writing before making any change in residence or telephone number.

(5) The defendant must not possess a firearm, destructive device or other dangerous weapon.

(6) The defendant must not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner. Marijuana is still prohibited under federal law.

(7) As marked below, the defendant must also:

( ☑ ) (a) submit to pretrial supervision and report to Pretrial Services as directed. The defendant is subject to random home contacts and verification of employment as deemed appropriate to monitor compliance with the conditions of release. The defendant shall notify Pretrial Services as soon as possible of any arrests.

( ☐ ) (b) ☐ continue or actively seek employment. ☐ continue or start an education and/or vocational program.

( ☑ ) (c) surrender any passport to Pretrial Services by _____ and not obtain a passport or any international travel document.

( ☑ ) (d) not leave the following areas except for travel to and from court: ☑ New York City; ☑ Long Island; ☐ New York State; ☐ New Jersey; ☐ Continental United States; ☐ as approved by Pretrial Services; ☑ other: _MASS._

( ☑ ) (e) not have any contact with the following individual(s), location or entity: (0-defts, witnesses etc except those in presence of counsel)

( ☐ ) (f) maintain residence at: _____ or at a location approved by Pretrial Services.

( ☐ ) (g) undergo testing, evaluation and/or treatment for substance abuse as directed by Pretrial Services.

( ☐ ) (h) undergo evaluation and treatment for mental health problems, as directed by Pretrial Services.

( ☑ ) (i) be subject to the following component of location monitoring, with technology as determined by Pretrial Services:

    ( ☑ ) (i) **Curfew** – restricted to residence ☐ daily from _____ to _____ ; or ☑ as directed by Pretrial Services.

    ( ☐ ) (ii) **Home Detention** – restricted to residence at all times, except for court appearances, court-ordered obligations, attorney visits, religious services, medical appointments, employment, education, substance abuse/mental health services and other activities approved in advance by Pretrial Services. Additionally, the Court permits: _____

    ( ☐ ) (iii) **Home Incarceration** – 24-hour lock-down at residence, except for medical necessities, court appearances, and any other activities ordered by the Court.

    ( ☐ ) (iv) **Stand Alone Monitoring** – no residential restrictions; this condition will be used in conjunction with global positioning system (GPS) technology.

( ☐ ) (j) pay all or part of cost of location monitoring, based on ability to pay as determined by Pretrial Services.

( ☐ ) (k) _____

## APPEARANCE BOND

I, the undersigned defendant, and each surety who signs the bond, acknowledge that I have read this Order Setting Conditions of Release and Appearance Bond and have either read all the other conditions of release or have had those conditions explained to me. (If the bond is secured by collateral, complete Appearance Bond Supplement.)

| x _Ping Lin_ , Surety | _220 Bay 13th St. Brooklyn_ Address | _4/15/23_ Date |
| x _Lin Qun_ , Surety | _220 Bay 13th St. Brooklyn_ Address | _4/15/23_ Date |
| , Surety | Address | Date |

## RELEASE OF THE BOND

This appearance bond may be terminated at any time by the Court. This bond will be satisfied, and the collateral will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

## FORFEITURE OF THE BOND

If the defendant does not comply with the conditions set forth in this Order Setting Conditions of Release and Appearance Bond, this appearance bond may be forfeited and the Court may immediately order the amount of the bond and any collateral to be surrendered to the United States. At the request of the United States, the Court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

## ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT – YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

- Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.
- While on release, if you commit a federal felony offense, the punishment is an additional prison term of not more than ten years, and for a federal misdemeanor offense, the punishment is an additional prison term of not more than one year. This sentence will be consecutive to (*i.e.*, must follow) any other sentence you receive.
- It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the Court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.
- If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:
    (1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;
    (2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or more than $250,000 or imprisoned for not more than five years, or both;
    (3) any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;
    (4) a misdemeanor – you will be fined not more than $100,000 or imprisoned not more than one year, or both.
- A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

## ACKNOWLEDGMENT OF THE DEFENDANT

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

x _____
Defendant's Signature

Release of the Defendant is hereby ordered on _4/15/23_
Date

_____ , US M J
Judicial Officer's Signature
Judge Peggy Kuo

AO 466A (Rev. 12/17)  Waiver of Rule 5 & 5.1 Hearings (Complaint or Indictment)

# UNITED STATES DISTRICT COURT
for the
Eastern District of New York

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Qing Hua Sun | ) |
| _____ | ) |
| Defendant | ) |

Case No.    23-393 M

Charging District's Case No. _____

## WAIVER OF RULE 5 & 5.1 HEARINGS
### (Complaint or Indictment)

I understand that I have been charged in another district, the *(name of other court)* _____
District of Massachusetts

I have been informed of the charges and of my rights to:

(1)    retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)    an identity hearing to determine whether I am the person named in the charges;

(3)    production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)    a preliminary hearing to determine whether there is probable cause to believe that an offense has been committed, to be held within 14 days of my first appearance if I am in custody and 21 days otherwise, unless I have been indicted beforehand.

(5)    a hearing on any motion by the government for detention;

(6)    request a transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

☑    an identity hearing and production of the warrant.

☑    a preliminary hearing.

☐    a detention hearing.

☐    an identity hearing, production of the judgment, warrant, and warrant application, and any preliminary or detention hearing to which I may be entitled in this district. I request that my
☐ preliminary hearing and/or ☐ detention hearing be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

Date:  4.25.23

X _____
*Defendant's signature*

_____
*Signature of defendant's attorney*

Michelle Gelernt
*Printed name of defendant's attorney*

CJA-23
(Rev 3/21)

# FINANCIAL AFFIDAVIT

IN SUPPORT OF REQUEST FOR ATTORNEY, EXPERT, OR OTHER SERVICES WITHOUT PAYMENT OF FEE

IN THE UNITED STATES ☐ DISTRICT COURT ☐ COURT OF APPEALS ☐ OTHER *(Specify Below)*

IN THE CASE OF

United States of America v. Qing Hua Sun

| FOR | |
|---|---|
| AT | LOCATION NUMBER |

PERSON REPRESENTED *(Show your full name)*

CHARGE/OFFENSE *(Describe if applicable & check box→)* ☑ Felony ☐ Misdemeanor

Title 18 USC 1956(h)
Conspiracy to Commit Money Laundering

1 ☐ Defendant - Adult
2 ☐ Defendant - Juvenile
3 ☐ Appellant
4 ☐ Probation Violator
5 ☐ Supervised Release Violator
6 ☐ Habeas Petitioner
7 ☐ 2255 Petitioner
8 ☐ Material Witness
9 ☐ Other *(Specify)* _____

| DOCKET NUMBERS | |
|---|---|
| Magistrate Judge | |
| District Court | |
| Court of Appeals | |

## ANSWERS TO QUESTIONS REGARDING ABILITY TO PAY

| | | |
|---|---|---|
| **INCOME & ASSETS** | **EMPLOYMENT** | Do you have a job? ☐ Yes ☑ No<br>**IF YES,** how much do you earn per month? _____<br>Will you still have a job after this arrest? ☐ Yes ☐ No ☐ Unknown |
| | **PROPERTY** | Do you own any of the following, and if so, what is it worth?<br>**APPROXIMATE VALUE   DESCRIPTION & AMOUNT OWED**<br>Home $ _____ _____<br>Car/Truck/Vehicle $ _____ N/A<br>Boat $ _____ _____<br>Stocks/bonds $ _____ _____<br>Other property $ _____ _____ |
| | **CASH & BANK ACCOUNTS** | Do you have any cash, or money in savings or checking accounts? ☑ Yes ☐ No  $7,000<br>**IF YES,** give the total approximate amount after monthly expenses $ 4140 |

| | | BILLS & DEBTS | MONTHLY EXPENSE | TOTAL DEBT |
|---|---|---|---|---|
| **OBLIGATIONS, EXPENSES, & DEBTS** | How many people do you financially support? 6 | | | |
| | | Housing | $ 1700 | $ |
| | | Groceries | $ 900 | $ |
| | | Medical expenses | $ | $ |
| | | Utilities | $ 160 | $ |
| | | Credit cards | $ | $ |
| | | Car/Truck/Vehicle | $ | $ |
| | | Childcare | $ | $ |
| | | Child support | $ | $ |
| | | Insurance | $ | $ |
| | | Loans | $ | $ |
| | | Fines | $ | $ |
| | | Other Cellphone | $ 100 | $ |

I certify under penalty of perjury that the foregoing is true and correct.

_____
SIGNATURE OF DEFENDANT
(OR PERSON SEEKING REPRESENTATION)

25/6/23
Date

USCA4 24